UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------- x
BRANDYN FARMER,                 :
                                :
          Plaintiff,            :
                                :
v.                              :  Civil No. 3:19-cv-1950(AWT)
                                :
OFFICER BARRET, NICOLE M. DOWNS, :
and SERGEANT JOHN T. FINN,      :
                                :
          Defendants.           :
------------------------------- x
```

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Brandyn Farmer, filed this civil rights

action pro se asserting three claims: (1) Sergeant John Finn of

the Bloomfield Police Department used excessive force against

him; (2) Officer Barrett of the Bloomfield Police Department

used excessive force against him; and (3) Officer Nicole Downs

failed to intervene to prevent that use of excessive force.[1] See

Initial Review Order, at 5–7, ECF No. 11. The defendants have

filed a motion for summary judgment. For the following reasons,

the defendants' motion is being granted as to defendants Finn

and Downs, and denied as to defendant Barrett.

---

[1] In the plaintiff's memorandum in opposition to the defendants' motion
for summary judgment, the plaintiff appears to refer to a failure-to-
intervene claim against Officer Finn: "A reasonable jury could also conclude
that Downs and Finn are liable for failing to intervene." Mem. Opp. Summ. J.
at 9, ECF No. 45-1 (emphasis added). However, neither the Initial Review
Order nor the complaint refers to such a claim. See Initial Review Order, at
7; Complaint, ECF No. 1. Accordingly, the court does not address a failure-
to-intervene claim against Sergeant Finn.

I.    **FACTUAL BACKGROUND**[2]

In the early afternoon on November 24, 2017, a disturbance at 17 Forest Lane, Bloomfield was reported to the Bloomfield Police Department. Officers Downs and Barrett and Sergeant Finn responded to the call.  While en route, the dispatcher informed them that there was an active arrest warrant for the plaintiff.

Prior to this incident, the plaintiff had been arrested five times by the Bloomfield Police Department and had successfully evaded arrest on more than one occasion. In December 2015, the plaintiff had jumped from a second-floor window at his residence, 17 Forest Lane, to successfully evade arrest. The plaintiff is a convicted felon.

Upon arrival at the residence, Officer Downs spoke to the complainant, the plaintiff's sister Briasha Farmer. She told Officer Downs that she and the plaintiff had argued about the mail and the plaintiff was hiding in the house.[3] Officer Downs also spoke to another sister, Shatoya Lazenby, who confirmed

---

[2] The facts are taken from the parties' Local Rule 56(a) Statements and supporting exhibits.

[3] The parties disagree about whether the plaintiff's family gave the defendants permission to enter and search the home. However, there is no claim in this case for an unreasonable search and, as there was an outstanding arrest warrant for the plaintiff, the police could enter his residence to arrest him without a search warrant. See Payton v. New York, 445 U.S. 573, 603 (1980) ("[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."); United States v. Lauter, 57 F.3d 212, 214 (2d Cir. 1995) (police generally do not need a search warrant to enter a suspect's home when they have an arrest warrant for that suspect). Thus, facts related to only that issue are not included here.

that the plaintiff and Briasha had argued over the mail.

While Officer Downs was speaking to Shatoya in the lower level of the home, Sergeant Finn came downstairs and told Officers Downs and Barrett, who were searching for the plaintiff on the lower level, that there was a laundry room and utility room off one of the lower-level bedrooms that had not been searched. Officers Downs and Barrett cleared the laundry room and proceeded to check the utility room, which was the last room to be checked.

Officer Downs entered the utility room with her firearm drawn and the flashlight on. Officer Barrett was right behind her. Officer Downs spotted the plaintiff hiding in the far corner of the room behind a water heater. The plaintiff hid in the utility room because he did not want to be bothered with the Bloomfield police. The utility room was the size of an office cubicle with no windows and the lights were off.

Officer Downs ordered the plaintiff to show her his hands and come out of his hiding place. The plaintiff did not comply. Officer Downs continued to order the plaintiff to show his hands and both she and Sergeant Finn ordered the plaintiff to come out. The plaintiff stood up after several commands but did not start to come out of his hiding place until Sergeant Finn threatened to use a police dog. As the plaintiff began to come out, he lit a cigarette.

3

The plaintiff told the officers to "back up" several times. Defs.' Local Rule 56(a)1 Statement, at ¶ 19, ECF No. 41-2. Officer Downs' body camera records the plaintiff asking the officers to back up all the way to the front door. Downs' Bodycam Footage, at 9:33, ECF No. 41-16.

The plaintiff lowered his hand to put his cigarette lighter back in the pocket of his hoodie. The plaintiff began walking toward Officer Downs and she again could see both of his hands. The plaintiff left the utility room and was standing in the doorway to the laundry room.

Officer Barrett had his taser pointed toward the plaintiff. Sergeant Finn ordered the plaintiff, at least eight times, to turn around to be handcuffed. The plaintiff did not comply. Instead, the plaintiff began taking personal items from his pockets and handing them, past Sergeant Finn, to family members/friends standing behind Sergeant Finn.

The plaintiff and the officers were all standing in the laundry room/half-bath which was "three-to-four feet in length." Defs.' Local Rule 56(a)1 Statement, at ¶ 30. When the plaintiff did not comply with a final order to turn around to be handcuffed, Sergeant Finn grabbed the plaintiff's arm to place him in handcuffs.

 The plaintiff struck Sergeant Finn and Officer Barrett and all three fell to the ground. The plaintiff's family members,

who were close by, began screaming at the officers. The parties
do not agree as to the actions taken by each participant in the
altercation. But the plaintiff admits to punching Sergeant Finn
in the head and punching Officer Barrett in the head with a
closed fist at least once or twice. He states that Officer Downs
was not involved in the altercation. Officer Barrett attempted
to "drive-stun" the plaintiff with his taser and was successful
on the last attempt. Id. ¶ 42. The officers were able to
handcuff the plaintiff. The parties disagree about whether the
plaintiff had been handcuffed at the time Barrett successfully
tased the plaintiff.

While the officers and the plaintiff were struggling on the
floor, the plaintiff's family members tried to enter the room
and were screaming at the officers. Sergeant Finn repeatedly
ordered the family members to move back.

Once the plaintiff was handcuffed, Officers Downs and
Barrett tried to escort him outside, but the plaintiff would
not, or could not, stand. The officers carried the plaintiff
outside. Officer Barrett was bleeding from a cut on his head.

Once outside, the plaintiff complained that he could not
breathe, and family members said that he had asthma. The
plaintiff used his inhaler, which was given to him by a family
member. Another responding officer tried to give him oxygen, but
the plaintiff refused, saying it was not helping. The plaintiff

5

was taken to the hospital.

When the hospital released the plaintiff back into police custody, the plaintiff was uncooperative. He wrapped his foot around the bar on the side of the bed to prevent the officers from moving him to a wheelchair. Once the plaintiff was in the back of the police car, he pulled the wires out of the video system.

Sergeant Finn and Officer Barrett also went to the hospital to have their injuries evaluated.

The plaintiff was charged with three counts of assault on public safety personnel, three counts of interfering with an officer, and breach of peace. The plaintiff pleaded guilty to assault on a public safety officer pursuant to the Alford doctrine, which he understood to mean that he did not agree to all the facts but conceded there was enough evidence to convict him. At his sentencing, the plaintiff apologized to the defendants in open court. The plaintiff was sentenced to a term of imprisonment of fifty-four months. The plaintiff concedes that he admitted fault for the incident.

## II.  LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.

6

Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S.
317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22
F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry
of summary judgment . . . against a party who fails to make a
showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will
bear the burden of proof at trial." Celotex Corp., 477 U.S. at
322.

When ruling on a motion for summary judgment, the court
must respect the province of the jury. The court, therefore, may
not try issues of fact. See, e.g., Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of
Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce
of Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is
well-established that "[c]redibility determinations, the
weighing of the evidence, and the drawing of legitimate
inferences from the facts are jury functions, not those of the
judge." Anderson, 477 U.S. at 255. Thus, the trial court's task
is "carefully limited to discerning whether there are any
genuine issues of material fact to be tried, not deciding them.
Its duty, in short, is confined . . . to issue-finding; it does
not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be
resolved is both genuine and related to a material fact.

Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial factual disputes will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant . . . and draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v.

Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).
Because credibility is not an issue on summary judgment, the
nonmovant's evidence must be accepted as true for purposes of
the motion. Nonetheless, the inferences drawn in favor of the
nonmovant must be supported by evidence. "[M]ere speculation and
conjecture" is insufficient to defeat a motion for summary
judgment. Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315
(2d Cir. 2007) (quoting Western World Ins. Co. v. Stack Oil,
Inc., 922 F.2d 118, 121 (2d Cir. 1990)).

## III. DISCUSSION

The defendants move for summary judgment on all three
claims on the following grounds: (1) the plaintiff's guilty plea
bars his excessive force claims; (2) defendants Barrett and Finn
are shielded from liability on the excessive force claims by
qualified immunity because the relevant constitutional right had
not been clearly established either in terms of the specificity
with which it had been defined or in terms of the understanding
of a reasonable officer; and (3) defendant Downs did not have a
realistic opportunity to intervene.

### A. **Excessive Force**

#### 1. Guilty Plea

Defendants Barrett and Finn argue that the plaintiff's
excessive force claims are barred under the Supreme Court's
holding in Heck v. Humphrey, 512 U.S. 477 (1994), because he

9

pled guilty to the charge of assault on a public safety officer.

In <u>Heck</u>, the Supreme Court held that a plaintiff cannot recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless he "prove[s] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." <u>Id.</u> at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983." <u>Id.</u> at 487.

To determine whether a claim is precluded under <u>Heck</u>, the court must "examine the relationship between the criminal conviction and each of the plaintiff's civil claims." <u>Jackson v. Suffolk Cty. Homicide Bureau</u>, 135 F.3d 254, 256 (2d Cir. 1998). "The rule of <u>Heck v. Humphrey</u> does not ordinarily bar a claim that the police used excessive force against a civil rights plaintiff, even if the excessive force occurred in the midst of an arrest that eventually led to a successful conviction." <u>McKay v. East Hartford Police Dep't</u>, No. 3:16-cv-1954 (JAM), 2017 WL 4247383, at *3 (D. Conn. Sept. 25, 2017); <u>see also</u> <u>Jackson</u>, 135 F.3d at 257 (finding excessive force claim under section 1983 not barred as "lack[ing] the requisite relationship to the conviction"). An excessive force claim is precluded by <u>Heck</u> only

if the "facts actually determined in his criminal convictions
that were necessary to the judgment of conviction are
incompatible with the claim of excessive force being raised in
the subsequent civil suit." Sullivan v. Gagnier, 225 F.3d 161,
166 (2d Cir. 2000).

The plaintiff pled guilty to the charge of assault on a
public safety officer. That charge has four elements: (1) the
victim of the assault was "reasonably identifiable" as a public
safety officer, (2) the conduct occurred while the public safety
officer was "acting in performance of his or her duties," (3)
the criminal defendant had the intent to "prevent [the public
safety officer] . . . from performing his or her duties," and
(4) the criminal defendant "caused physical injury" to the
public safety officer. See Conn. Gen. Stat. § 53a-167c.[4]

"Courts in the Second Circuit have held that excessive
force claims brought under § 1983 are barred by Heck when the
plaintiff-prisoner has pleaded guilty to an offense that
includes the element that the defendant-officer was performing a
lawful duty at the time of the altercation." Manley v. Grossman,

---

[4] The statute provides in pertinent part: "A person is guilty of assault of
public safety . . . personnel when, with intent to prevent a reasonably
identifiable peace officer . . . from performing his or her duties, and while
such peace officer, . . . is acting in the performance of his or her duties,
(1) such person causes physical injury to such peace officer . . . ." Conn.
Gen. Stat. Ann. § 53a-167c(a).

No. 13-CV-1974 (KMK), 2017 WL 4326541, at *5 (S.D.N.Y. Sept. 27, 2017) (citing cases). Assault of a public safety officer under Section 53a-167c(a) includes such an element. However, every instance where a plaintiff pleads guilty to assaulting a public safety officer does not implicate the Heck bar. Rather, "[e]xcessive force claims under § 1983 are barred only if 'facts actually determined in [the individual's] criminal conviction that were necessary to the judgment of conviction are incompatible with the claim of excessive force being raised in the subsequent civil suit.'" Bryant v. City of Hartford, No. 3:17-cv-1374 (VAB), 2021 WL 4477311, at *8 (D. Conn. Sept. 30, 2021) (second alteration in original) (quoting Sullivan, 225 F.3d at 166). "The elements of [an] assault charge [under Conn. Gen. Stat. Ann. § 53a-167c] are not, however, 'incompatible' with the claim of excessive force in its entirety. A jury still could find that, after the events resulting in the assault charge to which [the plaintiff] pled guilty, the [defendants] used excessive force to detain him." Id. (quoting Sullivan, 225 F.3d at 166) (citing Shapard v. Attea, 710 F. App'x 15, 17–18 (2d Cir. 2017) (summary order); Powell v. Scanlon, 390 F. Supp. 2d 172, 178–79 (D. Conn. 2005)). See also Harley v. Suffolk Cty. Police Dep't, No. 09-CV-2897 (JFB)(ARL), 2012 WL 642431, at *9 (E.D.N.Y. Feb. 28, 2012) ("Plaintiff's conviction does not preclude her ability to show that even if she assaulted officers

12

at some point during the arrest, their alleged force was still
excessive."); Jeanty v. County of Orange, 379 F. Supp. 2d 533,
543-44 (S.D.N.Y. 2005) (excessive force claim not barred by Heck
because "jury could reasonably conclude that even though
[plaintiff] assaulted [the police officer], after [plaintiff]
had been subdued, he was subjected to excessive force").

    With respect to the plaintiff's excessive force claim
against Officer Barrett, the facts recited when the plaintiff
entered his guilty plea relate to the time before he was
handcuffed. See Tr. June 8, 2018, at 5:7-15, ECF No. 41-20 (the
plaintiff began fighting with the officers as they began taking
him into custody, swinging his fists, and punching one officer
in the face). The parties dispute whether Officer Barrett tased
the plaintiff before or after the plaintiff was handcuffed and
whether the plaintiff was resisting arrest when he was tased.
Although "any claim of excessive force before [the plaintiff's]
assault would be barred because any such claim would
'necessarily require the plaintiff to prove the unlawfulness of
his conviction or confinement[,]'" Bryant, 2021 WL 4477311, at
*8 (quoting Heck, 512 U.S. at 486), the plaintiff is claiming
that "the excessive force in this case came after the
altercation" to which the plaintiff pled guilty. Mem. Opp. Summ.
J. at 5. Such a claim is not barred by Heck because a
determination that the plaintiff was tased after he was in

13

handcuffs and no longer resisting is not "incompatible" with the "facts actually determined in [the plaintiff's] criminal conviction that were necessary to the judgment of conviction. . . ." Bryant, 2021 WL 4477311, at *8 (quoting Sullivan, 225 F.3d at 166). Therefore, the defendants' motion for summary judgment on this ground is being denied as to the excessive force claim against Officer Barrett.

However, the plaintiff's argument fails with respect to the excessive force claim against Sergeant Finn. The plaintiff's sole argument in opposition to summary judgment with respect to the excessive force claim against Sergeant Finn is that "[t]he plaintiff's guilty plea and conviction was for conduct that occurred before he was put in handcuffs. This case is about what happened after he was put in handcuffs." Mem. Opp. Summ. J. at 7. However, the excessive force claim against Officer Finn is based on conduct that occurred prior to the point in time when the plaintiff was in handcuffs. See Initial Review Order, at 6 ("The plaintiff alleges the Officer Finn jumped on him when he had his hands raised and was not resisting being handcuffed. He alleges that he used force only in response to a use of force by an officer."). The defendants correctly point out that "the plaintiff does not appear to dispute that his claims for excessive force based upon the allegation that Officer Finn 'attacked' him and 'tried' to get him on the floor by jumping on

14

his back are barred by Heck." Reply Pl's. Obj. Defs.' Mot. Summ.
J. at 2, ECF No. 47. Therefore, the motion for summary judgment
with respect to the excessive force claim against Sergeant Finn
is being granted.

## 2. Qualified Immunity

"The doctrine of qualified immunity protects government
officials 'from liability for civil damages insofar as their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting
Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "When a
defendant invokes qualified immunity, courts consider whether
the plaintiff has shown '(1) that the [defendant] violated a
statutory or constitutional right, and (2) that the right was
clearly established at the time of the challenged conduct.'"
Muschette on Behalf of A.M. v. Gionfriddo, 910 F.3d 65, 69 (2d
Cir. 2018) (alteration in original) (quoting Wood v. Moss, 572
U.S. 744, 757 (2014)). "Courts have discretion to decide the
order in which they consider whether the officers violated a
federal right and whether the right was clearly established."
Id. (citing Tolan v. Cotton, 572 U.S. 650, 656 (2014)).

"A right is clearly established only if its contours are
sufficiently clear that a reasonable official would understand
that what he is doing violates that right." Id. (quoting Carroll

15

v. Carman, 574 U.S. 13, 16 (2014)). Qualified immunity may be invoked "when, even though plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the action complained of, it was nonetheless 'objectively reasonable' for the defendant official 'to believe that his acts did not violate those rights.'" Rodriguez v. Phillips, 66 F.3d 470, 475 (2d Cir. 1995) (quoting Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987)).

With respect to violation of a statutory or constitutional right, the defendants simply deny that Barrett tased the plaintiff while he was handcuffed. They do not contend that tasing the plaintiff while he was handcuffed would not have been a constitutional violation.

With respect to whether the constitutional right was clearly established, the defendants contend first, that the constitutional right claimed by the plaintiff had not been defined with the  requisite degree of specificity, and second, that a reasonable officer would not have understood that Barrett's alleged conduct violated that right.

As to defendant Barrett's first point, "[t]o determine whether the relevant law was clearly established, we consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of

16

preexisting law." Terebesi v. Torreso, 764 F.3d 217, 231 (2d
Cir. 2014). "[D]istrict court decisions—unlike those from the
courts of appeal—do not necessarily settle constitutional
standards or prevent repeated claims of qualified immunity."
Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011). The court
considers whether a holding prohibits the conduct in question as
well as whether "decisions from this or other circuits 'clearly
foreshadow a particular ruling on the issue.'" Terebesi, 764
F.3d at 231 (quoting Varrone v. Bilotti, 123 F.3d 75, 79 (2d
Cir. 1997)). Absent a "case[] of controlling authority" or "a
consensus of cases of persuasive authority," the defendants
"cannot have been 'expected to predict the future course of
constitutional law.'" Wilson v. Layne, 526 U.S. 603, 617 (1999)
(quoting Procunier v. Navarette, 434 U.S. 555, 562 (1978)).

Under Second Circuit law, use of a taser is not warranted
when an arrestee is handcuffed and not resisting officers. In
Muschette on Behalf of A.M. v. Gionfriddo, the court held that
"[i]t is clearly established that officers may not use a taser
against a compliant or non-threatening suspect." Muschette on
Behalf of A.M., 910 F.3d at 69 (citing Tracy v. Freshwater, 623
F.3d 90, 96-98 (2d Cir. 2010); Garcia v. Dutchess Cty., 43
F.Supp.3d 281, 297 (S.D.N.Y. 2014)). The Second Circuit recently
reaffirmed this holding in Katcham v. City of Mount Vernon,
where the court recognized that "[b]y March 2017, it was

17

'clearly established by our Circuit caselaw that it is impermissible to use significant force against a restrained arrestee who is not actively resisting. This is true despite differences in the precise method by which that force was conveyed.'" 992 F.3d 144, 151 n.2 (2d Cir. 2021) (quoting Lennox v. Miller, 968 F.3d 150, 157 (2d Cir. 2020)). See also Jones v. Treubig, 963 F.3d 214, 225 (2d Cir. 2020) ("[Prior to April 2015], it was clearly established in this Circuit that it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others. . . . It is beyond doubt that any reasonable police officer would know that the use of a taser . . . constitutes significant force."). Therefore, the right at issue here, i.e. the right for an arrestee to be free from the use of significant force by an officer, including tasing, when restrained and not actively resisting, "was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

As to defendant Barrett's second point, "[a]n officer is entitled to qualified immunity if 'any reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, could have determined that the challenged action was lawful.'" Muschette on Behalf of A.M., 910 F.3d at 70

18

(quoting <u>Figueroa v. Mazza</u>, 825 F.3d 89, 100 (2d Cir. 2016)).
However, "disputed issues of fact regarding the timing and
circumstances of the officer's use of [significant force]
preclude[] summary judgment on [an] excessive force claim."
<u>Jones</u>, 963 F.3d at 225 (citing <u>Tracy</u>, 623 F.3d at 98 (holding
that district court erred in granting summary judgment on an
excessive force claim where "the parties dispute[d] whether [the
defendant] used pepper spray before or after placing [the
plaintiff] in handcuffs" because "a reasonable juror could find
that the use of pepper spray deployed mere inches away from the
face of a defendant already in handcuffs and offering no further
active resistance constituted an unreasonable use of force.").

The parties disagree about when the taser was successfully
deployed. The defendants contend that Officer Barrett
successfully used the taser while the defendants were still
attempting to handcuff the plaintiff. The plaintiff claims that
he was already handcuffed and no longer fighting the officers
when he was tased by Barrett and that any movements he made then
were an attempt to breathe and not an effort to struggle with
the officers. The defendants rely on the bodycam footage.
However, the bodycam footage does not clearly show whether the
plaintiff was handcuffed when the taser was successfully
deployed or whether the plaintiff was attempting to resist
arrest when he was tased.

Assessing the record here, including the bodycam footage, "in the light most favorable to the non-movant and . . . draw[ing] all reasonable inferences in [the non-movant's] favor," Weinstock, 224 F.3d 33, 41 (2d Cir. 2000) (second alteration in original) (citations and internal quotation marks omitted), there remain genuine issues of material fact as to "the timing and circumstances" of the tasing. Jones, 963 F.3d at 225. It is difficult to determine precisely what happened when during the altercation because the room was poorly lit, the officers and the plaintiff are so close to each other, and the footage is not taken from a perspective that enables a viewer to clearly see the sequence of events in context. Rather, assessing the footage requires some explanation by the participants. Thus it cannot be determined at this time whether defendant Barrett's actions are shielded from liability by qualified immunity.

Therefore, defendant Barrett's motion for summary judgment on the ground of qualified immunity is being denied.

**B. Failure to Intervene**

"'A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it.' 'In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from

occurring.'" <u>Lennox v. Miller</u>, 968 F.3d 150, 158 (2d Cir. 2020)
(first quoting <u>Figueroa v. Mazza</u>, 825 F.3d 89, 106 (2d Cir.
2016; then quoting <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir.
1994)).

Defendant Downs argues that the plaintiff's failure to
intervene claim against her fails because "[t]he irrefutable
video evidence supports that there was no realistic opportunity
for Downs to prevent any claimed harm to the plaintiff in the
melee that ensued in the confined space of the basement laundry
room." Mem. L. Supp. Mot. Summ. J. at 26, ECF No. 41-1.

The plaintiff contends that ". . . the excessive force
occurred after the alleged 'melee,' when the plaintiff was no
longer resisting, and the other officers had every opportunity
to prevent the gratuitous use of force." Mem. Opp. Summ. J. at 9
(quoting Mem. L. Supp. Mot. Summ. J. at 26).

The plaintiff does not cite to evidence to support this
assertion, but it appears that the plaintiff's reference to the
defendants' brief is a citation to the video evidence on which
the defendants rely when discussing the "melee." Viewing that
video evidence in the light most favorable to the plaintiff,
however, no reasonable factfinder could conclude that Downs had
a "realistic opportunity to intervene to prevent the harm from
occurring." <u>Lennox v. Miller</u>, 968 F.3d at 158 (quoting <u>Anderson</u>
17 F.3d at 557). There was approximately twenty seconds between

the officers pushing the plaintiff onto the floor and Officer
Barrett's successful tasing of the plaintiff. There was a lot of
activity during those twenty seconds. During at least some part
of those twenty seconds, there was an ongoing struggle between
Finn and Barrett and the plaintiff in a small, crowded room as
they tried to handcuff him. Also, several of the plaintiffs'
family members were in the doorway shouting at the officers and
trying to enter the room. The plaintiff was successfully tased
only once. In this context, even under the plaintiff's version
of events, Downs was not presented with a realistic opportunity
to intervene.

Therefore, the motion for summary judgment is being granted
on the failure to intervene claim against defendant Downs.

**IV.   CONCLUSION**

Accordingly, Defendants' Motion for Summary Judgment (ECF
No. 41) is GRANTED in part and DENIED in part. The motion is
being granted as to the excessive force claim against Officer
Finn and as to the failure to intervene claim against Officer
Downs, and being denied as to the excessive force claim against
Officer Barrett.

It is so ordered.

Signed this 10th day of June 2022 at Hartford, Connecticut.

/s/ AWT
Alvin W. Thompson
United States District Judge

22